IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 12-0141-KD |
| | ) | |
| MORRIS SEARS, | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER

This matter comes before the Court on the United States' Motion in Limine (doc. 56). The Court has reviewed a pair of responses from the defendant (docs. 63, 70), as well as a reply from the Government (doc. 73). The Motion is now ripe for disposition.[1]

## I. Relevant Background.

In the Superseding Indictment (doc. 6), defendant, Morris Sears, is charged with seven counts (Counts Two through Eight) of knowingly concealing, covering up, falsifying, and making false entries in a document, with the intent to impede, obstruct and influence the administration of construction contracts by the National Park Service and the U.S. General Services Administration, all in violation of 18 U.S.C. § 1519. Each of these counts relates to certain Affidavits of Individual Surety submitted in support of Bid Bonds, Payment Bonds, and Performance Bonds. Counts Two through Eight charge Sears with making specific false statements in those Affidavits. An additional count (Count Nine) charges that Sears knowingly and fraudulently made false material statements under oath in connection with a bankruptcy case, in violation of 18 U.S.C. § 152(2).

---

[1] In its reply, the Government requests a pre-trial hearing on the authenticity issues raised in its Motion. However, review of the parties' briefs reveals no credibility disputes that would require an evidentiary hearing. Also, oral argument would be of little value here, given that the Court already has the benefit of the parties' respective positions on the merits as set forth in their briefs. Accordingly, the Motion is taken under submission without a hearing. *See* Local Rule 7.3.

As one might expect, a central component of the Government's proof concerning the § 1519 counts consists of the individual surety affidavits, bid bond packets, and related forms and documents. The records custodians for these materials are scattered across the country, in such farflung locations as California, Colorado and New Mexico. To avoid the expense and inconvenience attendant to arranging for those custodians to appear at trial, the Government asked Sears to stipulate to the authenticity of those records. Sears declined.

The Government also intends to submit into evidence certain transcripts of Sears' prior sworn testimony in depositions in civil cases and in bankruptcy creditor meetings, doubtless as proof of guilt as to the § 152(2) count. According to the Government, such transcripts contain admissions by Sears that are probative of whether he committed the offenses charged herein. As with the surety and bond documents, the Government requested that Sears stipulate to the authenticity of those transcripts, but Sears declined.

In light of these events, the Government filed a Motion in Limine, seeking a ruling that bars Sears from challenging the authenticity of these records, documents and transcripts at trial. At the Court's directive, the parties conferred in good faith to endeavor to resolve the issues presented in the Motion, and reported that they were partially successful.[2] Even after such

---

[2] In particular, the parties filed a "Report to the Court" (doc. 68) indicating that they have agreed to stipulate to the authenticity of Government Exhibits 35 (Chapter 11 Petition), 36 (Schedules), 38 (Claims Register), 40 (Warranty Deed), 41 (Mortgage), 42 (Mortgage Cancellation), and the Death Certificate that was incorrectly numbered as 42; and also to stipulate to the authenticity and business record nature of Sears' medical records. That's all well and good, and the Court applauds all stipulations and agreements by counsel that might streamline the trial proceedings; nonetheless, none of these stipulated documents appear to fall within the particular categories of items to which the Government's Motion in Limine was directed. So the net effect of this "Report to the Court" is that all of the authenticity issues presented in the Motion in Limine remain in play, and that counsel resolved none of them. Also, somewhat confusingly, the defendant wrote in the "Report to the Court" (without the Government's concurrence) that he would consider stipulating to authenticity of the subject transcripts "provided the government designates which portion of the transcripts it intends to produce." (Doc. 68, ¶ 5.) Frankly, Sears' position is difficult to understand. Either the transcripts are authentic or they are not. If the Government were to designate the particular portions of those transcripts it intends to introduce, such information would have no conceivable benefit to the defense in evaluating the authenticity of those transcripts. By all appearances, then, the defense would use its authenticity objection (which may or may not have any good-faith basis as to those transcripts) as leverage to obtain unrelated information that does not reasonably bear on the authenticity question, all for the purpose of obtaining some tactical or (Continued)

discussions, however, outstanding issues remain as to both bid/surety documents and transcripts that require adjudication by this Court.

## II.    Analysis.

The Federal Rules of Evidence are clear that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(a), Fed.R.Evid. Under that rule, "documents must be properly authenticated as a condition precedent to their admissibility." *United States v. Siddiqui*, 235 F.3d 1318, 1322 (11th Cir. 2000). "To authenticate a document, Rule 901 only requires a proponent to present sufficient evidence to make out a *prima facie* case that the proffered evidence is what it purports to be. … After meeting the *prima facie* burden, the evidence may be admitted, and the ultimate question of authenticity is then decided by the jury." *United States v. Lebowitz*, 676 F.3d 1000, 1009 (11th Cir. 2012) (citations and internal quotation marks omitted); *see also United States v. Lanzon*, 639 F.3d 1293, 1301 (11th Cir. 2011) (similar). Where objection is raised to the admissibility of evidence on authenticity grounds, the trial court's inquiry is whether the proponent of the evidence has shown authentication "by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Siddiqui*, 235 F.3d at 1322. If so, the objection must be overruled.

According to the Government's Motion, the authenticity of the surety affidavit forms and bond documents "is a settled matter" because such materials were previously admitted into evidence in an adversary proceeding initiated by the Government in Sears' bankruptcy case. (Doc. 56, at 1.) In particular, the Government shows that the Bankruptcy Court deemed many of these same exhibits admissible over Sears' objection, that Sears stipulated to the authenticity of certain of these exhibits during the bankruptcy case, and that Sears himself had introduced certain of these exhibits into evidence in the bankruptcy matter. In light of this history, the Government posits that Sears "should not be allowed to re-litigate the admissibility of these exhibits" which the Bankruptcy Court previously found to be admissible, that "he should not be

---

strategic advantage in other respects. The Government's reticence to venture down that path is unsurprising.

allowed to contest authenticity of the same documents for which his attorney had previously conceded authenticity," and that "[h]e should not now be allowed to challenge the authenticity of the exhibits he introduced" in the bankruptcy proceeding. (Doc. 56, at 3, 4.)

From a purely common-sense standpoint, the Government's Motion rings true. Unfortunately, the Government's argument is long on rhetoric about what Sears "should" or "should not" be allowed to do, and short on legal principles that would preclude him from contesting authenticity and putting the Government to its burden. As a general proposition, of course, it is the Government's responsibility under Rule 901 to prove authenticity of the exhibits it seeks to admit into evidence. *See, e.g., United States v. Lundy*, 676 F.3d 444, 452 (5th Cir. 2012) ("the burden is on the government to show by a preponderance of the evidence that the pertinent admissibility requirements are met and that the evidence is what it purports to be") (citation and internal quotation marks omitted). A criminal defendant is under no compulsion to stipulate to the authenticity or admissibility of anything. *See generally United States v. White*, 240 F.3d 656, 662 (7th Cir. 2001) ("we recognize that a defendant does have a right to force the government to meet its burden in establishing the elements of an offense"). So while the Government states that its Motion is "seeking a stipulation that the certified copies of documents the United States intends to introduce are in fact the business records on file at the various federal agencies" (doc. 73, at 3), this Court is in no position to force Sears to enter into such a stipulation.[3]

---

[3] That said, if the trial reveals that Sears does not have a good-faith basis for questioning the authenticity of the subject bond and surety documents, and if Sears is convicted, the Court may very well be in a position to tax the witness, travel and subsistence expenses of the various custodians of records against Sears. *See* 28 U.S.C. § 1918(b) ("Whenever any conviction for any offense not capital is obtained in a district court, the court may order that the defendant pay the costs of prosecution."); 28 U.S.C. § 1920(3) (listing as one category of taxable costs "[f]ees and disbursements for printing and witnesses"); 28 U.S.C. § 1821(c)(4) ("All normal travel expenses within and outside the judicial district shall be taxable as costs pursuant to section 1920 of this title."). Under the circumstances, Sears would be well-advised to give careful thought to whether he really does have good-faith reasons to question the authenticity of the documents in question, or whether his refusal to stipulate to authenticity is merely a kneejerk reaction borne of frustration over his perceived shabby, discourteous treatment by the Government, as implied in the final paragraph of his initial responsive brief (doc. 63). *See generally United States v. Walker*, 9 F.3d 1245, 1250 (7th Cir. 1993) (no error where trial judge asked criminal defendant to reconsider refusal to stipulate to authenticity of government's documentary evidence "unless he had a good faith basis for believing that there was something
(Continued)

The closest the Motion comes to a legal argument that Sears should be barred from challenging authenticity of the bond and surety documents is its reference to the doctrine of collateral estoppel. In particular, the Government writes in a footnote that "there is an argument that the principles of issue preclusion should apply to such subsidiary matters as to the objections raised by SEARS, especially as to the authenticity of documents." (Doc. 56, at 3 n.2.) Identifying that an argument exists is not the same as affirmatively making the argument. The Government does only the former, leaving the Court to guess as to the legal, doctrinal and precedential contours of such an argument, if the Government were even advancing same. More importantly, Sears has identified a crucial legal obstacle to the use of collateral estoppel here. Specifically, he correctly points out that the Eleventh Circuit has held "that the government may not collaterally estop a criminal defendant from relitigating an issue decided against the defendant in a different court in a prior proceeding." *United States v. Harnage*, 976 F.2d 633, 636 (11th Cir. 1992). The Government has done nothing to distinguish or undermine the holding in *Harnage*, which on its face is fatal to any collateral estoppel argument here.[4] Accordingly, the

---

wrong with the documents," where trial court "also acknowledged Walker's right to put the government to its proof"). Likewise, Sears should take a close look at whether his arguments that (a) the subordinate who signed the bond documents lacked authorization to do so, and (b) Sears was suffering from poor health at the time (doc. 70, at 3) have anything to do with the <u>authenticity</u> of the documents (*i.e.*, whether the documents are what they purport to be), as opposed to other potential objections to their admissibility (none of which are pertinent to the Motion in Limine). To argue that the exhibits may be inadmissible for some reason other than authenticity is not a valid, good-faith reason for refusing to stipulate to their authenticity and thereby forcing the Government to undertake the empty, expensive gesture of calling custodians of records from around the country to testify that these records and documents are, indeed, what they purport to be for Rule 901 purposes.

[4]  Even if collateral estoppel were available to be used against criminal defendants in the Eleventh Circuit, the Government has failed to establish that the elements of that doctrine are satisfied here. As a general matter, collateral estoppel applies only if "(1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding." *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998) (quotation marks omitted). The Government has made no showing of the second and third elements here, inasmuch as the record does not show that the authenticity of all of the subject documents was "actually litigated" in the bankruptcy proceeding, much less that the Bankruptcy (Continued)

Court is of the opinion that the doctrine of collateral estoppel / issue preclusion does not forbid Sears from challenging the authenticity of the surety affidavit and bid documents in this proceeding.

With respect to the transcripts of Sears' testimony in prior proceedings, the Government reiterates the same arguments that it presented with respect to the bond documents. Those contentions are equally unavailing as to the authenticity of the transcripts. However, the Government also raises an additional argument that such transcripts are self-authenticating where they are accompanied by a court reporter's certificate, without the need for an authenticating witness or other extrinsic evidence of authenticity. *See, e.g., Ball v. A.O. Smith Corp.*, 321 B.R. 100 (N.D.N.Y. 2005) (trial transcripts of unrelated proceedings were admissible under Rule 902(4) even without an authenticating witness, where transcripts contained court reporter certifications). Certified transcripts of prior deposition or court testimony appear to fit comfortably within the categories of self-authenticating records identified in Rule 902, Fed.R.Evid., and Sears has not responded to, much less rebutted, this argument. Accordingly, provided that the Government presents proper court reporter certifications for the transcripts in question, the admissibility of those documents may not be challenged on grounds of authenticity for lack of a custodian of records or other witness testifying at trial that the transcripts are, in fact, what they purport to be.

**III. Conclusion.**

For all of the foregoing reasons, the Government's Motion in Limine (doc. 56) is **granted in part**, and **denied in part**. The Motion is **granted** insofar as any authenticity objections may be raised to the admissibility of properly certified transcripts from prior civil or bankruptcy proceedings. Those certified transcripts are self-authenticating under Rule 902(4), Fed.R.Evid., and the Government need not present extrinsic evidence of their authenticity at trial. The Motion is **denied** with respect to the surety and bid documents; provided, however, that Sears is encouraged to consider carefully whether he has a good-faith basis for refusing to stipulate to the authenticity of these materials, and to notify the Government promptly if he concludes that he

---

Court's authenticity determinations (if any) were "a critical and necessary part of the judgment" in that case.

does not. Such a course of action would avoid the disruption, expense and inconvenience of the Government being forced to call custodians of records from around the country to testify at trial to the authenticity of records unless Sears has a reasonable basis for challenging same. It would also protect Sears from the risk of being held financially responsible for these witness expenses in the event of an unfavorable outcome at trial.

DONE and ORDERED this 9th day of October, 2012.

s/ WILLIAM H. STEELE  
CHIEF UNITED STATES DISTRICT JUDGE